Judge Robertson
delivered the opinion of the Court.
Sanders’s heirs, having obtained a judgment in ejectment against Ruddle, Norton and others, Norton was turned out of possession by a “habere facias” on the judgment. Afterwards, 1616 acres of land were sold to satisfy executions in favor of Ruddle and Norton, against Sanders’s heirs, for improvements.
Ruddle purchased 1000, and Norton the remaining 616 eres. Ruddle took possessionof the 1000 acres. *4 purchased by him. Norton did not enter on the 618 acres, which he bought, but appears tp have been living on a part of the 1000 acres purchased by Ruddle.
Exparte afS-davits if not objected to in in ferior court,; will be considered trial of motion for rest:-
*4 Sometime after these sales, Ruddle and the heirs pf Sanders made a compromise, whereby it was agreed that Ruddle should retain a small part of the 100.0 acres, and surrender the remainder at the expiration of .a given time, during which he was to enjoy the whole.
At the expiration of the stipulated time, the heirs exhibited the said agreement of compromise (in writing) in court, and moved for a restitution of possession according to its tenor. Restitution having been ordered by the court, Ruddle and Norton were turned out by the sheriff, under the process of the court, and the possession delivered to the agent of the heirs.
At the succeeding term of the same court, Norton moved the court to quash the process of restitution, and to reinstate him in the possession. The court overruled the motion, and he'has prosecuted this writ of error, to reverse the judgment of the court bn his motion.
The record presents a confused mass of orders apd proceedings, from which it is impossible to ascertain certainly the condition and rights of' the parties. Whether the 1000 acres purchased by Ruddle, under the execution were included in the judgment, in ejectment, in favor of Sanders’s heirs, is not clearly shewn j we feel authorized however to infer that they were.How, or when Norton acquired the possession after his eviction is not even intimated.
If there was no privity between him and Ruddle, and he did not hold either directly or indirectly, under the right acquired by the purchase of the 1000 acres by Ruddle, it was an abuse of the process of restitution, (if that had been ev.er so regqlar,) to evict him.
There is no direct proof of any such privity or relation between Norton’s possession and Ruddle’s right. On the contrary, if the affidavits of Ruddle and Myers can be considered as evidence, it is affirmed positively, that Norton was in possession before the sale *5 of the 1000 acres by execution. These affidavits ought not to have been received by the court, because they were exparle. But they were not ed to, and therefore, must be considered as legitimate testimony. They are however, somewhat indefinite, and leave the manner-of Norton’s possession in some mystery.
°r^.®rs,!’°r should never be granted, ^ben ¿oubiful or controverted
when^there’ can be re-effectual*1 mode of trial,
sioñTas^een taken'under process, void by^abmm of°r regular pro-c6s? court may, by or~ der of resti-*'P*aoe statu quo.
Orders for restitution, are summary and somewhat anomalous. They should never be granted, when they depend on facts,{Hnpais,” which are doubtful or controverted, and when there can be redress by a more regular and effectual mode of trial. They do not conclude the rights of the parties, or bar the appropriate remedies for asserting them.
When possession has been taken under a process void, or voidable, or by a manifest abuse of a regular process, the court, while it has control over the case, may place the parties “in statu quo” by an order of restitution. But in this case, although the order of restitution, on the motion of the heirs, was irregular, it cannot be nozo corrected. It could be reversed, only in a direct proceeding for that purpose. Ruddle does not complain of it. As Norton was not a party to it on the record, he can complain only of its perversion illegally to his prejudice.
If it were indisputably shewq, that Norton had a legal possession independant of, and unconnected with Ruddle, it would have been an abuse of the process, for restitution, to turn him out, and therefore, he might be reinstated by order of the court, on motion. But as he has been evicted, and it does not satisfactorily appear, when or how he acquired the possession again, this court would hot feel authorised to reverse the judgment of the circuit court, which refused restitution of a possession, the right to which was not shewn except by the simple fact, that he was in possession after his eviction by the judgment, and regular process of the court. If as a trespasser, he entered on the land, after his eviction, although it might be irregular to turn him out, by an order for restitution; yet,even in such a case, we are not prepared to admit, that he would be entitled to restitution of such tortious possession.
Mills and Brown, for plaintiff; Haggin, for defendant.
It was the duty of Norton, to make a clear and bona fide case, before he could be entitled to restitution on motion. He has failed to do this. His motion depended on facts; the most material of which were not of record, but in the country. These remain in doubt and confusion. He has not shewn that he is entitled to favor; and, as a matter of right,'his case does not demand, and would not justify restitution. See Crocket vs. Lashbrook, et. al. v. Monroe, 542.
If Norton had a possession, which, was legal and available, he may be redressed by an appropriate suit, in which all the facts may be fully and finally-tried. We must leave him as he is, to seek such redress, if he has been injured.
Wherefore, the judgment of the circuit court, is affirmed. •